IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

STEFFON GREENE,

              Plaintiff,

     v.                                     Civil Action No.
                                        9:05-CV-00327 (TJM/DEP)

KEVIN WALSH, *et al.,*

              Defendants.

─────────────────────────────────────────

APPEARANCES:             OF COUNSEL:

FOR PLAINTIFF:

STEFFON GREENE, *Pro Se*

FOR DEFENDANTS:

HON. GORDON J. CUFFY       MICHAEL McCARTHY, ESQ.
Onondaga County Attorney    Deputy County Attorney
421 Montgomery St., 10th Floor
Syracuse, NY 13202

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

     Plaintiff Steffon Greene, a former prison inmate who is proceeding

*pro se* and *in forma pauperis*, has commenced this civil rights action

pursuant to 42 U.S.C. § 1983 against the Onondaga County Sheriff and

various other employees of the County, including a medical doctor,

complaining of constitutional violations alleged to have occurred during the time of his confinement in a prison facility operated by the County.  In his complaint, as amended, plaintiff asserts claims stemming from the failure of corrections officers to protect him from a fellow inmate known to be antagonistic toward him, as well as the alleged failure of medical personnel to properly diagnose and treat injuries suffered at the hands of that other inmate.  Plaintiff seeks recovery of compensatory damages in the amount of $18 million based upon the assault, and $1 million based upon the defendants' failure to properly diagnose and treat his resulting injuries, and additionally seeks punitive damages in the sum of $250,000 against each of the named defendants.

Now that pretrial discovery has concluded, the sole defendant served and appearing in the action, Onondaga County Sheriff Kevin Walsh, has moved for summary judgment requesting dismissal of plaintiff's claims against him, arguing that they are substantively deficient and additionally asserting his entitlement to qualified immunity.[1]  Because

_____

[1]      In his motion defendant also seeks, in the alternative, an order precluding the plaintiff from offering expert medical testimony at trial in light of his failure to properly disclose his intention to do so during the course of pretrial discovery. In light of my recommendation with regard to the substantive portion of defendant's motion it is unnecessary to address this alternative request for relief.

neither plaintiff's complaint nor the remaining portions of the record now before the court disclose any evidence of his personal involvement in the constitutional deprivations alleged, I recommend that the defendant's motion for summary judgment be granted.

I.    BACKGROUND[2]

At the times relevant to this proceeding the plaintiff, who was subsequently transferred into the custody of the New York State Department of Correctional Services ("DOCS"), and later released from prison altogether, was an inmate at the Onondaga County Justice Center ("OCJC"), located in Syracuse, NY.  Defendant's Local Rule 7.1(a)(3) Statement (Dkt. No. 44-10) ¶ 8; *see also* Amended Complaint (Dkt. No. 8). On May 30, 2004, while housed at the OCJC, plaintiff and Joseph O'Donnell, another inmate, became involved in a verbal altercation concerning use of the jail phone.  Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 9.  As a result of the incident both of the

_____

[2]       As will be seen, in light of the plaintiff's failure to respond to the defendant's motion, the facts recited in defendant's Local Rule 7.1(a)(3) Statement of Material Facts are deemed to have been established, for purposes of the instant motion.  *See* pp. 9-11, *post*. In light of the procedural posture of the case, however, all inferences will be drawn, and any residual ambiguities resolved, in favor of the plaintiff. *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted)

participants in the argument were locked into separate cells, and a "no contact" order was issued for each inmate. *Id*.; Defendant's Motion (Dkt. No. 44) Exh. B.

At or about 11:30 am on the following day Corrections Sergeant LeBoeuf, who had arrived to relieve the deputy on duty in the pod for lunch, noted the "locked in" status of the plaintiff and O'Donnell, but briefly unlocked the two inmates' cells in order to allow a steward inmate to retrieve their lunch trays.[3] Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 10; Defendant's Motion (Dkt. No. 44) Exh. C.  When the two cells were unlocked, inmate O'Donnell immediately rushed into the plaintiff's cell and punched him.  Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶¶ 11, 13; Defendant's Motion (Dkt. No. 44) Exh. C.  Upon witnessing the incident, Corrections Sergeant LeBoeuf signaled a "code orange" alert, indicating the existence of an emergency on the pod.  Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 11; Defendant's Motion (Dkt. No. 44) Exh. C.  Several corrections workers responded to the "code orange", and the incident was ultimately

---

[3]    It is apparent from defendant's papers, although not expressly so stated, that the plaintiff has incorrectly spelled that corrections sergeant's name as "LeBeaf". The clerk is hereby requested to adjust his records to reflect the correct spelling of that individual's name as "LeBoeuf."

4

terminated with the return of inmate O'Donnell to the first floor of the pod, and of the plaintiff to his cell.  Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶¶ 13-14.

Shortly following the incident the plaintiff was examined by Mary Beth Ranier, a nurse at the facility.  Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 14; Defendant's Motion (Dkt. No. 44) Exhs. C and E (Plaintiff's Medical Records).[4]  Upon examination it was determined that plaintiff had suffered a hematoma to his left eye, with "moderate swelling noted."  Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 15; Defendant's Motion (Dkt. No. 44) Exh. E.  Ice was administered and Motrin 800 prescribed for plaintiff's pain, and Greene was placed on a physician's assistant sick call list for further evaluation. Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 15; Defendant's Motion (Dkt. No. 44) Exh. E at pp. 4-5.

On June 1, 2004, plaintiff was seen by Physician's Assistant ("PA") Sara Austin-Wilson.  Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 16.  PA Austin-Wilson observed that the area affected by

---

[4]     Plaintiff's medical records, which were compiled and forwarded to the court in hard copy, have been filed under seal pursuant to an order issued on October 17, 2007.  *See* Dkt. No. 45.

plaintiff's reported injury "puffed up" when he blew his nose, and further noted mild left periorbital ecchymosis and palpable swelling, recommending an outside evaluation to rule out the existence of any fracture.  *Id*. ¶ 16; Defendant's Motion (Dkt. No. 44) Exh. E at pp. 4-5.

Plaintiff was transferred later that same day to the Upstate Medical Center emergency room for evaluation.  Defendant's Local Rule 7.1(a)(3) Statement ¶ 17.  There, Greene was examined by Dr. Peter J. Mariani, and x-rays of his left supraorbital region were taken.  *Id*. ¶ 18; Defendant's Motion (Dkt. No. 44) Exh. E at pp. 15-19.  As a result of Dr. Mariani's examination and review of plaintiff's x-rays, "[n]o obvious osseous abnormality" was discerned.  *Id*.  Plaintiff was ultimately discharged from Upstate at approximately 3:00 pm on the following day, and returned to the OCJC.  *Id*. ¶ 19; Defendant's Motion (Dkt. No. 44) Exh. E at pp. 11-12.  A consultation return form completed at the hospital's emergency room listed a diagnosis of plaintiff's condition as a head injury with an assessment of mild to moderate pain, with no dizziness or blurred vision, and recommended neurological checks quarterly for a twenty-four hour period.  *Id*. ¶ 19; Defendant's Motion (Dkt. No. 44) Exh. E at p. 12.

Plaintiff was transferred into DOCS custody on June 4, 2004 and

6

initially designated to the Elmira Correctional Facility ("Elmira").

Defendant's Local Rule 7.1.(a)(3) Statement (Dkt. No. 44-10) ¶ 21.  Upon

that transfer Greene's medical records were transmitted to the DOCS with

a note on the cover sheet indicating "Recent Injury to Eye – Punched in

Eye – See Report."  *Id*. ¶ 22; Defendant's Motion (Dkt. No. 44) Exh. E at

p. 3.  In his complaint plaintiff asserts that on June 15, 2004, following his

transfer into Elmira, he underwent a CAT scan at the Arnot Ogden

Medical Center, located in Elmira, New York, revealing a "depressed

orbital floor fracture" in his left eye with "associated blood in the left

maxillary sinus."  Amended Complaint (Dkt. No. 8) Section 6(b) ¶¶ 7-8.

Plaintiff subsequently underwent corrective surgery on June 24, 2004 to

repair the damage to his left orbital bone, and now alleges that he has a

vitallium plate in the floor of his left orbit and suffers from a variety of

resulting symptoms, including "scarring, numbness of his left cheek and

upper lip area, chronic rhinitus ... and the need now for corrective eye

glasses."  *Id*. at ¶ 11.

II.    PROCEDURAL HISTORY

        Plaintiff commenced this action on March 15, 2005, and later filed an

amended complaint – the operative pleading now before the court – on

April 25, 2005.[5]  Dkt. Nos. 1, 8.   In his complaint, as amended, plaintiff asserts that the defendants failed to adequately protect him from harm while incarcerated in the OCJC, and additionally that the corrections and medical officials involved were deliberately indifferent to his medical needs stemming from the incident.  Named as defendants in plaintiff's complaint are Onondaga County Sheriff Kevin Walsh, Corrections Sergeant LeBoeuf, Dr. Mark Johnstone, M.D., and a single John Doe defendant.

On October 15, 2007 defendant Walsh, the only one of the named defendants who has been served and appeared in the action, filed a motion seeking summary judgment dismissing plaintiff's complaint or, alternatively, an order precluding the admission of expert medical testimony on plaintiff's behalf at trial.  Dkt. No. 44.  In his motion, defendant Walsh offers a variety of grounds for dismissal of plaintiff's claims including, *inter alia*, lack of personal involvement, additionally seeking a finding that he is entitled to qualified immunity.  Defendant's motion, to which plaintiff has not responded, is now ripe for determination and has been referred to me for the issuance of a report and

---

[5]      While plaintiff applied for and was granted leave to amend his complaint to identify the defendant previously sued only as "Officer John Doe", *see* Dkt. No. 31, he failed to do so, later advising the court in writing that he was opting to proceed based on the earlier-filed amended complaint.  *See* Dkt. No. 41.

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).[6] *See also* FED. R. CIV. P. 72(b).

III.    DISCUSSION

        A.    Plaintiff's Failure to Oppose Defendant's Motion for Summary
              Judgment

        Before turning to the merits of plaintiff's claims, a threshold issue to

be addressed is the legal significance, if any, of his failure to oppose

defendant's summary judgment motion, and specifically whether that

failure automatically entitles the defendant to dismissal of plaintiff's

complaint, based upon his motion.

        This court's rules provide that

                [w]here a properly filed motion is unopposed and the
                Court determines that the moving party has met its
                burden to demonstrate entitlement to the relief requested
                therein, the non-moving party's failure to file or serve any
                papers as required by this Rule shall be deemed as
                consent to the granting or denial of the motion, as the
                case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  Undeniably, *pro se* plaintiffs are entitled to special

latitude when defending against summary judgment motions.  *See*

*Jemzura v. Public Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997)

---

        [6]    Defendant's notice of motion contains language advising the plaintiff of
the potential consequences of failing to properly oppose the motion, and in that regard
generally complies with the requirements of N.D.N.Y. L.R. 56.2.

(McAvoy, C.J.)).  Despite this measure of deference, the failure of an unrepresented plaintiff to oppose a summary judgment motion does not preclude the court from granting the motion.  *Robinson v. Delgado*, No. 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1998 WL 278264, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by the face of Local Rule 7.1(b)(3), however, before summary judgment can be granted under such circumstances the court must review the motion to determine whether it is facially meritorious.  *See Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 231-32 (N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By choosing not to submit papers in opposition to his motion, plaintiff has left the facts set forth in defendant's Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have routinely invoked Local Rule 7.1(a)(3) and its predecessor,

10

Local Rule 7.1(f), thereby deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[7]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendant's assertion of facts as set forth in his Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing the pending motion for facial sufficiency.

>    B.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no

---

[7]    According to Local Rule 7.1(a)(3), "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3).

11

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

_____C.   Personal Involvement

The only defendant appearing to date in this action is Onondaga County Sheriff Kevin Walsh.  In his motion, defendant Walsh urges dismissal of plaintiff's claims against him based upon the plaintiff's failure to establish the requisite personal involvement on his part in the constitutional deprivations alleged.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Neither plaintiff's complaint nor the record now before the court implicates any awareness on the part of, or involvement by, Sheriff Walsh in either the alleged failure to protect or in connection with the medical services provided to the plaintiff following the May 30, 2004 incident.  It is

14

true that in his amended complaint, plaintiff does assert that Sheriff Walsh

was negligent in training the other defendants in proper procedures

regarding  keep-lock and work "no contact" procedures.  *See* Amended

Complaint (Dkt. No. 8), Third Cause of Action.  Plaintiff also asserts that

defendant Walsh was deliberately indifferent to his needs and "failed to

make inquires into the activities of his subordinates."  *Id.* § 6(c)(3).   Such

conclusory allegations, unsupported by anything of evidentiary value, are

insufficient to avoid dismissal of civil rights claims on a motion for

summary judgment for lack of personal involvement.  *See Deluca v. Bank*

*of Tokyo-Mitsubishi UFJ, LTD.*, No. 06 Civ. 5474, 2008 WL 857492, at *7

(S.D.N.Y. Mar. 31, 2008); *Brown v. Goord*, No. 04-CV-0785, 2007 WL

607396, at *4 (N.D.N.Y. Feb. 20, 2007) (McAvoy, S.J.).

It appears likely that plaintiff is asserting liability on Sheriff Walsh's

part based upon his capacity as the supervisor of the jail facility in which

the incident occurred.  It is well-established, however, that this does not

provide a sufficient basis for finding liability in a case such as this; a

supervisor cannot be held liable for damages under section 1983 solely by

virtue of being a supervisor – there is no *respondeat superior* liability

under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.

2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be

liable in one of several ways: 1) the supervisor may have directly

participated in the challenged conduct; 2) the supervisor, after learning of

the violation through a report or appeal, may have failed to remedy the

wrong; 3) the supervisor may have created or allowed to continue a policy

or custom under which unconstitutional practices occurred; 4) the

supervisor may have been grossly negligent in managing the subordinates

who caused the unlawful event; or 5) the supervisor may have failed to act

on information indicating that unconstitutional acts were occurring.  *Iqbal*

*v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007); *see also Richardson*, 347

F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-

24 (2d Cir. 1986).

     The record contains no evidence that would support liability on the

part of Sheriff Walsh under any of these alternative theories.  The actions

of Corrections Sergeant LeBoeuf, which form the underpinning of plaintiff's

failure to protect claim, appear to have occurred not pursuant to any

established policy or practice at the OCJC, instead at most constituting an

isolated act of negligence or lapse in judgment.  The alleged failure on the

part of medical personnel to properly diagnose plaintiff's injuries, once

again, does not appear to have been the result of any policy or practice at the facility leading to the denial or deprivation of proper medical care. Under these circumstances, I recommend the entry of summary judgment dismissing plaintiff's claims against Sheriff Walsh for lack of personal involvement.

D.    Dismissal of Claims Against Remaining Named Defendants

In addition to Sheriff Walsh, plaintiff's complaint also asserts claims against Sergeant LeBoeuf and Dr. Mark Johnstone.[8]  Neither of these defendants has either been served in the action or appeared voluntarily. Although defendant's motion does not explicitly request this relief, I have *sua sponte* determined to raise the question of whether plaintiff's claims should proceed against the two remaining, unserved defendants.

The decision to raise this issue is bottomed upon the requirement, imposed by Rule 4(m) of the Federal Rules of Civil Procedure, that service in a case be made within 120 days of issuance of the summons, absent a

---

[8]    Plaintiff has also sued an unknown corrections officer as a "John Doe" defendant.  Because plaintiff has failed to take measures necessary to identify and join that individual by his or her correct name, his claim against the Doe defendant is subject to dismissal.  As a practical matter, a plaintiff who fails to identify "John Doe" defendants within the statute of limitations risks losing the opportunity to sue those defendants.  *See Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 469 (2d Cir. 1995); *Cole v. Miraflor*, No. 99 CIV 0977, 2001 WL 138765, at *4-5 (S.D.N.Y. Feb. 19, 2001).

court order extending that period.[9]  "[W]here good cause is shown, the court has no choice but to extend the time for service, and the inquiry is ended."  *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996).  "If, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time."  *Id.* (citing Fed. R. Civ. P. 4(m)); *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) ("[D]istrict courts have discretion to grant extensions even in the absence of good cause."); *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986).  When examining whether to extend the prescribed period for service, a district court is afforded ample discretion to weigh the "overlapping equitable considerations" involved in determining whether good cause exists and whether an extension may be granted in the

---

[9]      That rule provides that

> [i]f a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m). This court's local rules shorten the time for service from the 120 day period under Rule 4(m) to sixty days.  *See* N.D.N.Y.L.R. 4.1(b).

18

absence of good cause.  *See Zapata*, 502 F.3d at 197.

A plaintiff's *pro se* status entitles him or her to a certain degree of leniency insofar as service of process is concerned; courts generally favor resolution of a case on its merits rather than on the basis of a procedural technicality.  *Poulakis v. Amtrak*, 139 F.R.D. 107, 109 (N.D. Ill. 1991). When a plaintiff proceeds *in forma pauperis*, such as is the case in this instance, the court is obligated to issue the plaintiff's process to the United States Marshal, who must in turn effect service upon the defendants, thereby relieving the plaintiff of the burden to serve process once reasonable steps have been taken to identify for the court the defendants named in the complaint.  *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). That does not mean, however, that a *pro se* plaintiff may stand idly by upon being notified that efforts by the U.S. Marshals Service to serve a particular defendant have been unsuccessful.  *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938-43 (E.D. Mich. 2004).  In such instances it is incumbent upon the plaintiff to develop, though pretrial discovery or otherwise, any additional information necessary to permit service by the United States Marshals Service.  *See VanDiver*, 304 F. Supp. 2d at 942.

In this case the two defendants at issue have not been served or

otherwise appeared in the action within the appropriate time period.

Based upon a review of the record I am unable to find good cause

justifying plaintiff's failure to effectuate timely service, and discern no

sufficient basis presented to exercise my discretion in favor of extending

the governing period of service.  Accordingly, since this court has never

acquired jurisdiction over them, plaintiff's complaint should be dismissed

as against those defendants, without prejudice.  *See, e.g., Michelson v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp. 1279, 1282

(S.D.N.Y. 1989) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S.

438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until

defendants properly served with summons and complaint).

IV.    SUMMARY AND RECOMMENDATION

Plaintiff's failure to effectuate service and obtain jurisdiction over two

of the named defendants, including Corrections Sergeant LeBoeuf and Dr.

Mark Johnstone, provide ample basis for dismissal of plaintiff's claims

against those defendants, without prejudice.  Turning to plaintiff's claims

against the sole defendant who has been served and appeared in the

action, Onondaga County Sheriff Kevin Walsh, while defendant Walsh has

raised several arguments challenging the merits of plaintiff's failure to

protect and deliberate indifference claims – and there is considerable facial merit to his arguments regarding those claims – in light of the present posture of the case I find it unnecessary to make a recommendation regarding those arguments or the additional assertion of entitlement to qualified immunity.  Neither plaintiff's complaint nor the record before the court discloses any basis for finding personal involvement on the part of Sheriff Walsh in the constitutional deprivations alleged.  Defendant Walsh is therefore entitled to summary judgment dismissing plaintiff's claims against him on this basis, with prejudice.

Accordingly, it hereby

RECOMMENDED, that the defendant's motion (Dkt. No. 44) be GRANTED and that plaintiff's claims against defendant Kevin Walsh be DISMISSED, with prejudice, and that his claims against Corrections Sergeant LeBoeuf and Dr. Mark Johnstone additionally be DISMISSED, without prejudice

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. §

636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.


Dated:      June 24, 2008
            Syracuse, NY



_____
David E. Peebles
U.S. Magistrate Judge

22